Jeffrey S. Dubin, P.C.
Attorneys for Plaintiffs
464 New York Avenue
Suite 100
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TRUSTEES of the SHEET METAL WORKERS' NATIONAL
PENSION FUND; TRUSTEES of the NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE FOR THE SHEET
METAL AND AIR CONDITIONING INDUSTRY; TRUSTEES
of the SHEET METAL OCCUPATIONAL HEALTH INSTITUTE
TRUST; TRUSTEES of the INTERNATIONAL TRAINING
INSTITUTE FOR THE SHEET METAL AND AIR
CONDITIONING INDUSTRY; TRUSTEES of the NATIONAL
STABILIZATION AGREEMENT OF THE SHEET METAL
INDUSTRY FUND,

                       Plaintiffs,

     -against-

LIFFEY SM CORP., and
MICHAEL FREEMAN, as an individual,

                       Defendants.
-----------------------------------------------------------------x

CIVIL ACTION NO.
14 CV 5249 (RRM)(RLM)
ECF CASE

SETTLEMENT
STIPULATION
AND ORDER

IT IS HEREBY STIPULATED AND AGREED, by and between the attorneys for the plaintiffs and the attorney(s) for the defendants, all the parties to the above entitled action, that whereas no party hereto is an infant or incompetent person for whom a committee has been appointed and no person not a party has an interest in the subject matter of the action, the above entitled action is settled upon the following terms and conditions:

1. Defendant, Liffey SM Corp., agrees that it is a party to a collective bargaining agreement with Local Union 28, Sheet Metal Workers' International Association.

2. Defendant Michael Freeman agrees that he is liable as an individual for the contributions sought by this action under the Employee Retirement Income Security Act of 1974, as amended, (ERISA), 29 U.S.C. § 1001 *et seq.*

3. Pursuant to said collective bargaining agreement and ERISA, defendants agree that they owe to plaintiffs Sheet Metal Workers' National Pension Fund, National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry, Sheet Metal Occupational Health Institute Trust, International Training Institute for the Sheet Metal and Air Conditioning Industry and National Stabilization Agreement of the Sheet Metal Industry Fund, contributions amounting to $48,459.21.

4. Pursuant to said collective bargaining agreement and ERISA, defendants agree that they owe to plaintiffs Sheet Metal Workers' National Pension Fund, National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry, Sheet Metal Occupational Health Institute Trust, International Training Institute for the Sheet Metal and Air Conditioning Industry and National Stabilization Agreement Of the Sheet Metal Industry Fund, interest amounting to $6,528.01.

5. Pursuant to said collective bargaining agreement and ERISA, defendants agree that they owe to plaintiffs Sheet Metal Workers' National Pension Fund, National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry,

Sheet Metal Occupational Health Institute Trust, International Training Institute for the Sheet Metal and Air Conditioning Industry and National Stabilization Agreement Of the Sheet Metal Industry Fund, liquidated damages for the time period of amounting to $20,903.26.

6. Pursuant to said collective bargaining agreement, defendants agree that they owe to plaintiffs Sheet Metal Workers' National Pension Fund, National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry, Sheet Metal Occupational Health Institute Trust, International Training Institute for the Sheet Metal and Air Conditioning Industry, National Stabilization Agreement Of the Sheet Metal Industry Fund, late fees amounting to $10,172.31.

7. Pursuant to said collective bargaining agreement, defendants agree that they owe to plaintiffs Sheet Metal Workers' National Pension Fund, National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry, Sheet Metal Occupational Health Institute Trust, International Training Institute for the Sheet Metal and Air Conditioning Industry, National Stabilization Agreement Of the Sheet Metal Industry Fund, (the Funds), audit fees and costs amounting to $15,000.00.

8. Pursuant to said collective bargaining agreement and ERISA, defendants agree that they owe to plaintiffs, attorneys' fees of $2,857.50, and costs of $470.86, said attorneys' fees and costs totaling $3,328.36.

9. Defendants agree that said contributions; interest; liquidated damages; late fees; audit fees and costs and attorney's fees and costs owed to plaintiffs amount to

$104,391.15.

10. Defendants shall pay the sum in 24 installments. The first installment of $4,349.63, is due upon execution of this agreement by the defendants. Thereafter, defendants shall make 23 monthly payments, each in the amount of $4,349.63, together with 0.708 percent interest per month on the declining balance, added to the payment, as per the attached payment schedule. Payments shall be post marked on or before the first business day of the month that follows the first day of the month. The second installment is due on or before January 1, 2015. Payments shall be made by good check, payable to Jeffrey S. Dubin, as attorney, and sent to Jeffrey S. Dubin, P.C., 464 New York Avenue, Suite 100, Huntington, New York 11743.

11. Default by defendants is defined as the failure to make any required payment under this Agreement, in full, including interest, within five (5) days of its due date, and the failure to cure after five (5) days telecopier/facsimile notice to defendants. Default is further defined as the dishonor of any check tendered as payment hereunder, and the failure to cure after five (5) days telecopier/facsimile notice to defendants. Default by defendants is further defined as the failure to continue to pay **online** during the term of this Agreement, any and all contributions due and owing to the Funds on or before the date such contributions are due, for as long as defendants are legally obligated to contribute to the plaintiffs. Default by defendants is further defined as the failure to file with the Funds, during the term of this Agreement any and all contribution reports, **online,** on or before the date such contribution

*Page Number -4-*

reports are due, for as long as defendants are legally obligated to file such reports with the plaintiffs. Default by defendants is further defined as the failure to file **online**, within ten days after this Agreement has been so ordered, all past due contribution reports.

12. Data and payments must be transmitted electronically through the National Benefit Funds' Internet Payment System, which is accessible at www.smwnpf.org (or ips@smwnpf.org, or call 1-800-231-4622 ext. 747). The defendants agree that if they are not already "set up" to pay and file online, they will contact plaintiffs at (703) 739-7000, extension 747 or at IPS@smwnpf.org, to make arrangements to pay and file online.

13. The defendants agree that if more than two telecopier/facsimile notices of default are required to be given under this Settlement Stipulation, the defendants shall be charged $250.00 for each additional set of notices. Failure to pay said $250.00 within 30 days of the date of the additional notice of default shall be considered a default under this Settlement Stipulation.

14. The defendants agree that if any payment instrument submitted under this Settlement Stipulation is returned to plaintiffs unpaid, the defendants shall be charged $100.00 for each such returned payment instrument. Failure to pay said $100.00 within 30 days of the date of the returned payment instrument shall be considered a default under this Settlement Stipulation.

15. Upon default by defendants, defendants consent to the entry of a judgment against them, jointly and severally, without further notice, in the amount of $104,391.15, less

any amounts paid hereunder, plus interest of 8.5% per annum on the amounts due from the date the payment was due, until the date paid, plus attorney's fees and costs, all as provided for by ERISA, in the United States District Court for the Eastern District of New York.

16. Plaintiffs agree that upon payment in full hereunder, plaintiffs' attorney shall forthwith prepare a Limited Release of defendants for all claims asserted in this action, or if a judgment has been entered hereunder, a Satisfaction of Judgment, and in such event, he shall file the same with each Clerk with whom said judgment was docketed. The Limited Release shall reserve the right of the plaintiffs to audit defendants' payroll books and records for the same period of time as alleged in this action. The Limited Release shall reserve the right of the plaintiffs to pursue any amounts found to be due by said audit. The Limited Release shall reserve the rights of the plaintiffs to pursue any amounts found to be due as a result of the filing of delinquent contribution reports.

17. The Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of this Settlement Agreement and any Order or Judgment resulting therefrom.

18. Either party may, without notice, submit this Agreement to the Court to be "so ordered."

19. The parties agree that the defendants have entered into this Stipulation for the purpose of resolving plaintiffs' claims without protracted litigation. The parties further agree that this Stipulation is made without prejudice to the parties' rights and defenses in any other matters or disputes between the parties, or between either of the parties and any third parties.

20. This Stipulation covers contributions due for the period of October 1, 2010, through July 31, 2014, and interest on the contributions due for that period, calculated through September 4, 2014. The amount of the contributions due covered by this Stipulation were derived solely from the business records of the defendants, which were transmitted to the Funds. This Stipulation does not cover any other contributions which may be due. The parties agree that if at any time in the future, an audit of the payroll records of the defendants reveal that additional amounts of contributions than are provided for by this Settlement Stipulation, are owed for the time period of January 1, 2014 through July 31, 2014, the plaintiffs may seek to collect said additional contributions and may file suit to recover same.

21. The parties agree that if at any time in the future, an audit of the payroll records of the defendants reveal that lesser amounts of contributions than are provided for by this Settlement Stipulation, were due for the time period of January 1, 2014 through July 31, 2014, the defendants may seek to collect said overpayments and may file suit to recover the same.

22. The parties agree that if at any time in the future, the defendants report to the plaintiffs additional hours of covered employment that occurred during the time period covered by this Settlement Stipulation, the plaintiffs may seek to collect the contributions that are due for such additional hours, plus any interest, penalties and attorney's fees and may file suit to recover the same.

23. The parties agree that if at any time in the future a participant of any of the

plaintiffs comes forward with evidence of hours worked for defendants, but not reported by defendants, the plaintiffs may pursue such remedies as they may have with respect to said unreported hours.

24.     This Settlement Stipulation does not include the settlement of any withdrawal liability under ERISA that the defendants may now have or may have in the future.

25.     Nothing in this Settlement Stipulation shall modify, amend, or alter any provision of any document or provision which governs the payment of benefits by the Sheet Metal Workers' National Pension Fund, including, but not limited to, any provision pertaining to or relating to Covered Employment, including, but not limited to, rules pertaining to an Owner-Member's status as a Covered Employee, or rules pertaining to the accrual of benefits or the crediting of service, or participation in the Sheet Metal Workers' National Pension Fund as a Contributing Employer or as a Participant, or rules pertaining to credited service or eligibility for benefits.

26.     This Settlement Stipulation constitutes the entire understanding between the parties with respect to the matters addressed herein and supersedes any and all prior written and/or oral agreements, representations, warranties, statements, promises, undertakings or understandings, if any, pertaining to the subject matter hereof.

27.     This Settlement Stipulation may only be amended by a written instrument signed by the party or parties to be charged thereby. Neither the parties, nor their agents have made promises or oral or written statements other than those that appear within this

Settlement Stipulation. This Settlement Stipulation may not be altered, amended or modified or otherwise changed in any respect whatsoever, except by a subsequent writing executed by all of the parties.

28. The parties agree and hereby state that the consideration stated herein is the sole consideration for this Settlement Stipulation and that such consideration is contractual and not a mere recital.

29. Each of the parties to this Settlement Stipulation hereby represents and warrants to one another that he, she or it has read this entire Settlement Stipulation, that the contents are fully known and understood and that the same has been executed by its own free will, without any promises other than as set forth herein, threats or the exertion of duress upon it.

30. Each of the parties to this Settlement Stipulation represents and warrants to each other that: (a) this Settlement Stipulation has been duly authorised by it and the persons or person executing this document is authorized to do so on its behalf; (b) the execution and performance of this Settlement Stipulation shall not violate any other obligation which it may have by contract or operation of law, and (c) the person signing this Settlement Stipulation is legally competent to execute this document.

31. The parties agree that they have jointly drafted this Settlement Agreement and in any event each of them waives any right to assert any rule of construction that would operate to construe any ambiguity against any party drafting this Settlement Stipulation.

32.     This Settlement Stipulation shall be binding and enforceable against, and shall inure to the benefit of, all successors, assigns, and representatives of the parties, and the other persons and entities to be released. This Settlement Stipulation is intended to benefit the parties only, and shall not be construed to benefit any person not a party hereto.

33.     Whenever possible, each provision of this Settlement Stipulation shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision of this Settlement Stipulation shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Settlement Stipulation.

34.     This Settlement Stipulation has been made within the Eastern District of New

THE REMAINDER OF THIS PAGE WAS INTENTIONALLY

LEFT BLANK

York. It shall be construed according to ERISA and federal law.

Dated:	Huntington, New York
	November 6, 2014

_____
JAMES J. MARKOWSKI (    )
James J. Markowski, Esq.
Attorney for Defendants
Liffey SM Corp. and
Michael Freeman, as an individual
4555 Henry Hudson Parkway #504
Riverdale, New York 10471
646.820.1215
917.685.4518 Cell
james.markowski@gmail.com

_____
JEFFREY S. DUBIN (JD-0446)
Jeffrey S. Dubin, P.C.
Attorneys for Plaintiffs
Suite 100
464 New York Avenue
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

Dated: _____

SO ORDERED:

_____
United States District Judge

Liffey SM Corp. - Payment Schedule        (Prepared 11/10/14)

| Payment # & Due Date | Interest @ 0.708% | Payment | Balance |
|---|---|---|---|
|  |  |  | $104,391.15 |
| 1.  Upon execution | -0- | $4,349.63 | $100,041.52 |
| 2.  1/5/15 | $708.29 | $5,057.92 | $ 95,691.89 |
| 3.  2/2/15 | $677.50 | $5,027.13 | $ 91,342.26 |
| 4.  3/2/15 | $646.70 | $4,996.33 | $ 86,992.63 |
| 5.  4/1/15 | $615.91 | $4,965.54 | $ 82,643.00 |
| 6.  5/1/15 | $585.11 | $4,934.74 | $ 78,293.37 |
| 7.  6/1/15 | $554.32 | $4,903.95 | $ 73,943.74 |
| 8.  7/1/15 | $532.52 | $4,873.15 | $ 69,594.11 |
| 9.  8/3/15 | $492.73 | $4,842.36 | $ 65,244.48 |
| 10. 9/1/15 | $461.93 | $4,811.56 | $ 60,894.85 |
| 11. 10/1/15 | $431.14 | $4,780.77 | $ 56,545.22 |
| 12. 11/2/15 | $400.34 | $4,749.97 | $ 52,195.59 |
| 13. 12/1/15 | $369.55 | $4,719.18 | $ 47,845.96 |
| 14. 1/4/16 | $338.75 | $4,688.38 | $ 43,496.33 |
| 15. 2/1/16 | $307.95 | $4,657.58 | $ 39,146.70 |
| 16. 3/1/16 | $277.16 | $4,626.79 | $ 34,797.07 |
| 17. 4/1/16 | $246.36 | $4,595.99 | $ 30,447.44 |
| 18. 5/2/16 | $215.57 | $4,565.20 | $ 26,097.81 |
| 19. 6/1/16 | $184.77 | $4,534.40 | $ 21,748.18 |
| 20. 7/1/16 | $153.98 | $4,503.61 | $ 17,398.55 |
| 21. 8/1/16 | $123.18 | $4,472.81 | $ 13,048.92 |
| 22. 9/1/16 | $ 92.39 | $4,442.02 | $  8,699.29 |
| 23. 10/3/16 | $ 61.59 | $4,411.22 | $  4,349.66 |
| 24. 11/1/16 | $ 30.80 | $4,380.43 | $     -0- |